**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION**

| | |
|---|---|
| **HENRY LEE MOODY, JR.,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **vs.** | )   **Civil Action No. 17-00168-KD-B** |
| | ) |
| **PHYSICIANS MUTUAL INSURANCE** | ) |
| **COMPANY AND PHYSICIANS LIFE** | ) |
| **INSURANCE COMPANY,** | ) |
| | ) |
| **Defendants.** | ) |

<u>**ORDER**</u>

This action is before the Court on the motion for judgment on the pleadings, or in the alternative, motion for summary judgment, brief, and exhibits filed by Defendants Physicians Life Insurance Company and Physicians Mutual Insurance Company (doc. 47).  Upon consideration, and for the reasons set forth herein, the motion for summary judgment is **GRANTED.**  Accordingly, the Final Pretrial Conference set for July 17, 2018, jury selection set for July 31, 2018, and trial during the August term, are **CANCELLED**.

I. <u>Factual and procedural history</u>

Physicians Mutual Insurance Company is an insurance company, but it does not sell life insurance (doc. 47-3, p. 3).  Physicians Life Insurance Company sells life insurance.  Yolanda Moody applied for a $10,000 life insurance policy with Physicians Life Insurance Company on April 10, 2011 (doc. 47-5, application). She named Henry Lee Moody, Jr., her spouse, as the beneficiary. (Id.) Mr. Moody testified that when Ms. Moody did this, he and Ms. Moody were separated and that Ms. Moody was staying in Mobile, Alabama with their daughter, Dekaya Moody (doc. 47-8, p. 3, 7, 9).  Mr. Moody lived and worked in Lucedale, Mississippi (doc. 47-

8, p. 3, 6, 9).[1]  Mr. Moody was visiting Ms. Moody in Mobile, when Ms. Moody filled out the

application (doc. 47-8, p. 9).  Although filled out in Mobile, Ms. Moody listed her home

address as Lucedale, Mississippi on the application (doc. 47-5).

The policy issued April 21, 2011. Ms. Moody's address is shown as Lucedale,

Mississippi (doc. 47-6).  She is identified as the owner and the insured. The policy contains a

document captioned "Summary of Mississippi Life and Health Insurance Guaranty Association

Act and Notice Concerning Coverage Limitations and Exclusions" (doc. 47-6, p. 11).

In relevant part, the first page of the policy, captioned "Schedule of Benefits and

Premiums", includes the following statements:

> This policy provides graded death benefit whole life insurance with modified
> premium, face amount payable at death, death benefits limited to 110% of
> premiums paid during first two policy years for non-accidental death and face
> amount for accidental death, premiums are payable during the lifetime of the
> insured.

DEATH BENEFIT

Benefits for Death Occurring During:

| FIRST AND SECOND POLICY YEAR | Face amount for accidental death. 110% (one hundred ten percent) of Premiums paid if not accidental death. |
|---|---|
| THIRD POLICY YEAR AND AFTER | Face amount. |

(Doc.47-6, p. 2).

The paragraph of the policy, captioned "Death Benefit", contains the following

statements:

---

[1] The deposition was taken on November 7, 2017. Although, Defendant alleged in the Notice of
Removal that Mr. Moody was a citizen of Alabama. He appears to have been a citizen of
Mississippi at all times.  The removal was based on diversity of citizenship. Since Defendant is
a citizen of Nebraska, diversity still exists despite the error regarding Mr. Moody's citizenship.

2

> If the Insured dies while the Policy is in force, We will pay: . . .
>
> The Death Benefit for the first two years of the Policy is 110% of the premium paid for the policy unless death is due to an accident. If death is due to an accident, the full Face Amount is payable.
>
> ACCIDENTAL DEATH is death that:
>
> a) results from an accidental bodily injury occurring while the policy is in force;
> (b) occurs within 180 days of the injury; and
> (c) is independent of disease, suicide, and all other causes.

(Doc. 47-6, p. 4).

Ms. Moody received a welcome letter from Physicians Mutual and Physicians Life that was also sent to her address in Lucedale, Mississippi (doc. 37-1).  The letter was signed by the President of Physicians Life (Id.)  The letter contained the following statement:

> Please remember full accidental death benefits are payable immediately.  For death by non-accidental causes, in the first two years, we pay return of premiums and more (see your policy for details). This is how we can guarantee everyone coverage.
>
> It's true! With the Modified Whole Life Insurance Policy you have immediate coverage and lifetime protection with a guaranteed benefit amount and no worry of a rate increase. Simple and affordable protection YOU CAN COUNT ON --- GUARANTEED!

(Doc. 37-1, p. 2).

Ms. Moody suffered from ALS, also known as Lou Gehrig's Disease (doc. 47-8, p. 7). She died on March 4, 2012 in Mobile, Alabama (doc. 47-4, p. 6, Certificate of Death).  At that time, Ms. Moody was staying with her daughter Dekaya Moody, who provided care for her (doc. 47-8, p. 7). Mr. Moody testified that Ms. Moody was in a "weakened condition" and "had to be assisted from time to time" with "getting around" (doc. 47-8, p. 7, 13, 14). She had had a

tracheotomy tube installed about a year before her death and "was on a machine" (doc. 47-9, p. 45; doc. 47-8, p. 7, 13, 14).

Dekaya Moody[2] found her mother face down on the floor of the half-bath adjoining her bedroom (doc. 47-9, p.7-9, 22).  Dekaya stated that her mother's feet were on the carpet in the bedroom and agreed that based upon where her feet were, her mother tripped before she actually entered the small half-bath (doc. 47-9, p. 9). Dekaya stated that she got her mother up and helped her back into bed (doc. 47-9, p. 9-12, 22).  Ms. Moody indicated that the tracheotomy needed to be cleaned and when Dekaya cleaned it, bright red blood came out of the trach. She stated that this had not happened before and that Ms. Moody continued to have trouble catching her breath after the trach was cleaned (Id., p. 9-10). She also stated that Ms. Moody had a bruise on her upper right collarbone, shoulder and chest (Id. p. 10, 11).  She believed that this bruise was caused by Ms. Moody falling and hitting the toilet (Id., p. 10-11). She stated that Ms. Moody was in pain, having difficulty breathing, and was turning purple around her mouth and lips. (Id, p. 12-13).  About thirty or forty-five minutes after helping Ms. Moody back into the bed, and at Ms. Moody's request, Dekaya left the house for about fifteen minutes to go to the pharmacy (Id., p. 14-15).

Mr. Moody testified that their son found Ms. Moody's body on the floor between the bedroom and the bathroom (doc. 47-8, p. 13, 16).  Mr. Moody concluded that Ms. Moody's death was an accident, specifically a fall, which occurred while she was going to or from the bathroom (doc. 47-8, p. 13, 14, 15). He also testified that Ms. Moody was in a "weakened condition" at the time of her death (*Id*., p. 13) ("While trying to go to the restroom, my wife, in

---

[2] Defendants provided a copy of the sworn statement given by Dekaya Moody on December 21, 2012 (doc. 47-9).

a weakened condition, fell. Because she had an accident.").  In the complaint, Mr. Moody

alleged that Ms. Moody "succumbed to Respiratory Failure due to ALS" (doc. 47-4, p. 3).  He

attached a copy of the Certificate of Death to the complaint.

In the Certificate of Death, Jeffrey Faggard, M.D., certified that the immediate cause of

death was respiratory failure, "due to (or as a consequence of) ALS" (doc. 47-4, p. 6).  Dr.

Faggard listed ALS as a "condition . . . leading to the immediate cause of death". (Id.)  He

identified the "manner of death" as "natural causes." (Id.)  He did not identify any accident or

injury contributing to the immediate cause of death. (Id.)

Mr. Moody applied for death benefits with Physicians Mutual on March 7, 2012 (doc.

37-2, Electronic Memo-Customer Service Request dated March 7, 2012 and showing

"Company Name" as "Physicians Mutual").[3]  Mr. Moody is identified as the beneficiary and

his address is shown as 907 Church Street, Lucedale, Mississippi. On April 3, 2012, Claim

Services for Physicians Life sent Mr. Moody a letter to his home in Lucedale, Mississippi

requesting a copy of the death certificate, obituary notice if available, and written confirmation

of his address (docs. 37-3).  A copy of the original letter was sent to Mr. Moody on April 24,

2012, again to Lucedale, Mississippi.  The letter is stamped "Here is a copy of our original

letter.  May we have your reply?  Thank You." (doc. 37-4). The letterhead references both

Physicians Mutual and Physicians Life. Claim Services again asked for a copy of the death

certificate, obituary notice if available, and written confirmation of Mr. Moody's address (Id.).

---

[3] Mr. Moody did not respond to this motion. These facts are taken from Mr. Moody's response
to the first motion for summary judgment and are the same undisputed facts upon which the
Court relied to reach its decision as to that motion (doc. 45).

On June 4, 2012, Mr. Moody, through counsel Glover & Miller LLC, a law firm in Mobile, Alabama, made demand for the face amount of the policy (doc. 47-3).  Crossing in the mail with the letter from counsel, on June 7, 2012, Claim Services for Physicians Life sent another letter to Mr. Moody in Lucedale, Mississippi (doc. 37-5).  Again, he was asked to provide a copy of the death certificate, obituary notice if available, and written confirmation of his address (Id.). This letter did not include Physicians Mutual on the letterhead. [4]

On July 25, 2012, Physicians Life sent Mr. Moody a letter acknowledging his telephone inquiries and its unsuccessful attempts to contact him (doc. 37-6).  The letter also stated as follows:

> Based on the Death Certificate we have in file which indicates death was due to natural causes, we would handle this as a life insurance claim with death due to a sickness.
>
> Since you indicated you want us to consider accidental death benefits, we sent a letter on June 18 indicating the additional information needed to review the claim.
>
> This policy defines accidental death as, "Accidental death is death that: a) results from accidental bodily injury occurring while the policy is in force; b) occurs within 180 days of the injury; and c) is independent of disease, suicide and all other causes."
>
> We also have in file the letter from your attorney Lynn C. Miller. Again, since there was no autopsy performed and, as the letter indicates, the Death Certificate does state natural causes, we do need the previously requested information.  If you could provide us with additional information to include a HIPAA compliant authorization, we will obtain medical records.

(Doc. 37-6).

---

[4]  All three letters contained the following statement: "Life Insurance Policy D85-477-856 provides a 110 percent return of all premium(s) paid for death due to sickness during the first or second policy year." (Id.)

On August 9, 2012, Physicians Life issued a check to Mr. Moody for $359.70, which was sent to him in care of Glover & Miller LLC (doc. 47-3, p. 5). The reduced-benefit amount represented 110% of the premiums paid before Ms. Moody's death (Id., p. 3). On August 13, 2012, Physicians Life wrote a letter to Mr. Moody's counsel stating that Mr. Moody's claim for the face amount of death benefits was denied on basis that Ms. Moody's "death was a non-accidental death occurring in the first two years of the policy" (doc. 47-3).

On August 4, 2016, Mr. Moody received a Notice of Unclaimed Funds from Physicians Mutual stating that the payment for $359.70 had not been cashed. He was asked to respond by October 1, 2016, or the funds would be paid into the Unclaimed Property Division of the state where the payment was issued (doc. 37-7).

On March 27, 2017, Mr. Moody filed a complaint against Physicians Mutual in the Circuit Court of Mobile County, Alabama. He claimed breach of contract and fraud and sought compensatory and punitive damages. He alleged that Physicians Mutual breached the contract and committed fraud by not honoring the policy and paying the full amount of $10,000.  The action was removed to this Court.

On January 4, 2018, Mr. Moody filed a complaint against Physicians Mutual and Physicians Life Insurance Company in the Circuit Court of Mobile County, Alabama. He claimed breach of contract and fraud and sought compensatory and punitive damages as to both Defendants.  Again, Mr. Moody alleged that Physicians Mutual breached the contract and committed fraud by not honoring the policy and paying the full amount of $10,000.   He also alleged a claim for breach of fiduciary duty against both Defendants.  The action was removed to this Court and consolidated with the earlier action.

Defendant Physicians Mutual filed a motion for summary judgment as to the two claims against it. Instead of responding to the motion, Mr. Moody filed a motion to dismiss the action and the motion was denied.  Mr. Moody then responded to the motion for summary judgment. Ultimately, the motion was granted and judgment as a matter of law was entered in favor of Physicians Mutual as to Mr. Moody's claims for breach of contract and fraud (doc. 45).

Defendant Physicians Mutual and Physicians Life have now moved for summary judgment as to the three claims against them.  After the motion was filed, Mr. Moody moved for an extension of time to respond and the motion was granted.  However, instead of filing a response, Mr. Moody filed a notice that he had terminated his attorney-client relationship with his attorney.  Soon thereafter, Defendants filed a motion to enforce settlement agreement wherein they argued that the case had settled and Mr. Moody should be bound to the settlement agreement.

In view of these circumstances, the Court reset the final pretrial conference and trial, and gave Mr. Moody until June 25, 2018 to respond to the motion for summary judgment (doc. 53). Mr. Moody's attorney then filed a motion to withdraw and the motion was granted. In the order granting the motion, the Magistrate Judge stated that Mr. Moody should either notify the Court in writing that he intended to proceed *pro se* or have new counsel file a written notice of appearance no later than June 29, 2018 (doc. 55). The Clerk mailed Mr. Moody a copy of the Order and the Court's Pro Se Litigant Guide. To date, Mr. Moody has not responded to the motion for summary judgment and has not responded to the Magistrate Judge's Order.  The items mailed to Mr. Moody have not been returned.

II. Conclusions of Law

A. Standard of Review

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a) (Dec. 2010). Defendants, the parties seeking summary judgment, bear "the initial burden to show the district court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial." *Clark v. Coats & Clark, Inc.,* 929 F.2d 604, 608 (11th Cir. 1991). The party seeking summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Clark,* 929 F.2d at 608 (quoting *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S. Ct. 2548, 2553 (1986)). In deciding whether the Defendants have met their initial burden, the Court must review the record and draw all reasonable inferences therefrom in a light most favorable to the Plaintiff as the non-moving party. *See Whatley v. CNA Ins. Co.*, 189 F.3d 1310, 1313 (11th Cir. 1999).

Once the Defendants meet this responsibility, the burden shifts to the non-movant Plaintiff to show the existence of a genuine issue of material fact that would preclude summary judgment. *See Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986). "In reviewing whether the [non-movant has met the] burden, the court must stop short of weighing the evidence and making credibility determination of the truth of the matter. Instead, the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Tipton v. Bergrohr GMBH-Siegen*, 965 F.2d 994, 999 (11th Cir. 1992) (citing *Anderson v. Liberty Lobby*, 477 U.S. 242, 255, 106 S. Ct. 2505 (1986) ((bracketed text added). However, the Defendants will be entitled to summary judgment if Plaintiff fails "to

make a sufficient showing on an essential element of [his] case with respect to which [he] has the burden of proof.'" *In re Walker*, 48 F. 3d 1161, 1163 (11th Cir. 1995) (quoting *Celotex Corp.*, 477 U.S. at 323, 106 S. Ct. at 2552) (bracketed text added). Overall, the Court must "resolve all issues of material fact in favor of" the Plaintiff, and then "determine the legal question of whether [Defendants are] entitled to judgment as a matter of law under that version of the facts." *McDowell v. Brown*, 392 F.3d 1283, 1288 (11th Cir. 2004) (citing *Durruthy v. Pastor*, 351 F.3d 1080, 1084 (11th Cir. 2003)) (bracketed text added).

The mere existence of any factual dispute will not automatically necessitate denial of a motion for summary judgment; rather, only factual disputes that are material preclude entry of summary judgment. *Lofton v. Secretary of Dept. of Children and Family Services*, 358 F.3d 804, 809 (11th Cir. 2004). To show a genuine issue of material fact, the nonmoving party must produce evidence that would allow a reasonable fact-finder to return a verdict in its favor. *Greenberg v. BellSouth Telecommunications, Inc.,* 498 F.3d 1258, 1263 (11th Cir.2007) (per curiam); *Waddell v. Valley Forge Dental Assocs.,* 276 F.3d 1275, 1279 (11th Cir.2001). However, "[s]peculation does not create a genuine issue of fact...." *Cordoba v. Dillard's, Inc.,* 419 F.3d 1169, 1181 (11th Cir.2005) (internal quotation marks and citation omitted). "A mere 'scintilla' of evidence supporting the [nonmovant's] position will not suffice; there must be enough of a showing that the [trier of fact] could reasonably find for that party." *Walker v. Darby,* 911 F.2d 1573, 1577 (11th Cir.1990) (citations omitted).

In this action, Plaintiff Moody did not respond to the motion for summary judgment. However, the Court must still consider the merits of the motion. *United States v. One Piece of Real Property Located at 5800 SW 74th Ave., Miami, Fla.*, 363 F.3d 1099, 1101 (11th Cir.2004) ("[T]he district court cannot base the entry of summary judgment on the mere fact

that the motion was unopposed, but, rather, must consider the merits of the motion ... [and] ensure that the motion itself is supported by evidentiary materials."); *Mann v. Taser Int'l, Inc.*, 588 F.3d 1291, 1303 (11th Cir.2009) ("Even in an unopposed motion [for summary judgment], ... the movant is not absolve[d] ... of the burden of showing that it is entitled to judgment as a matter of law.") (citations and internal quotation marks omitted).

B. Analysis

1. Mr. Moody's claim for breach of contract and fraud against Physicians Mutual[5]

In the now consolidated actions, Mr. Moody alleges that Physicians Mutual and Physicians Life breached the terms of the insurance policy and committed fraud by not paying the full amount of the policy upon Ms. Moody's death (doc. 47-4, Counts One and Two). Previously, Mr. Moody raised the same claims against Physicians Mutual (compare doc. 1-1, with doc. 47-4). The Court held that Physicians Mutual was entitled to summary judgment in its favor as to both claims (doc. 45). Defendants now argue that these claims against Physicians Mutual should be dismissed on basis of res judicata (doc. 47). Alternatively, they argue that the claims should be dismissed on the merits, based on the Court's prior decision.

Res judicata is a procedural defense, which may be addressed before proceeding to substantive arguments. *JAWHBS, LLC v. Arevalo*, 2016 WL 4142498, at *4 (S.D. Fla. Aug. 4, 2016) ("The Court begins by addressing the Defendants' three broader procedural arguments through which they seek dismissal of all or substantially all of the Plaintiffs' claims (1) lack of

---

[5] Defendants have argued that Physicians Mutual is entitled to summary judgment because Mr. Moody sued the wrong company (doc. 47, p. 18-19). Defendants point out that the undisputed evidence clearly establishes that Physicians Mutual does not sell life insurance and that the Insured's policy was issued by Physicians Life, a separate legal entity. Since the Court has determined that Physicians Mutual is entitled to summary judgment in its favor on other grounds, the Court need not address this argument.

standing; (2) res judicata; and (3) preemption—before proceeding to the substantive arguments regarding the individual counts.").  Issue preclusion, sometimes referred to as collateral estoppel, and claim preclusion are "collectively referred to as 'res judicata.'" *Sealey v. Branch Banking & Trust Co*., 693 F. App'x 830, 833 (11th Cir. 2017) (citing *Taylor v. Sturgell,* 553 U.S. 880, 892, 128 S. Ct. 2161 (2008).

"The doctrine of claim preclusion, . . . 'bars the filing of claims which were raised or could have been raised in an earlier proceeding.'" *Sealey*, 693 F. App'x at 833 (quoting *Citibank, N.A. v. Data Lease Fin. Corp*., 904 F.2d 1498, 1501 (11th Cir. 1990)); "Claim preclusion bars a subsequent lawsuit when four elements are present: (1) a final judgment on the merits was entered; (2) the prior decision was rendered by a court of competent jurisdiction; (3) the parties, or those in privity with them, are identical in both suits; and (4) the same cause of action is involved in both cases." *Sealey*, 693 F. App'x. at 833 (citations omitted).

"Issue preclusion applies when: (1) the issue at stake is identical to the one involved in the prior litigation; (2) the issue was actually litigated in the prior suit; (3) the determination of the issue in the prior suit was a necessary part of the judgment in that action; and (4) the parties are the same or in privity with each other and the party against whom the earlier decision is asserted had a full and fair opportunity to litigate the issue in the earlier proceeding." *Diamond v. Hastie*, 2018 WL 1660323, at *4, n.3 (S.D. Ala. Mar. 16, 2018), *report and recommendation adopted,* 2018 WL 1655346 (S.D. Ala. Apr. 5, 2018) (quoting *Baloco v. Drummond Co., Inc.*, 767 F.3d 1229, 1251 (11th Cir. 2014)); *see Draper v. Atlanta Independent Sch. Sys.,* 377 F. App'x 937, 940 (11th Cir. 2010)) ("We have consistently concluded that when the substance and facts of each action are the same, res judicata bars the second suit.") (citing *Ragsdale v.*

*Rubbermaid, Inc.,* 193 F. 3d 1235, 1239 (11th Cir. 1999) and *Pelletier v. Zweifel*, 921 F.2d 1465, 1502 (11th Cir.1991)).

Mr. Moody's claims were heard by a court of competent jurisdiction, both Mr. Moody and Physicians Mutual were parties in the first action, and the same claims for breach of contract and fraud were raised in both complaints.[6] Although final judgment by separate document has not been entered, the summary judgment order was not preliminary or partial, but instead set forth the Court's final decisions as a matter of law in favor of Physicians Mutual, and disposed of all claims raised in the first complaint. *See Humphrey v. U.S. Department of Homeland Security,* 681 Fed. Appx. 797, 798 (11th Cir. 2017 (finding that "Humphrey's prior litigation (*Humphrey I*) . . . resulted in a final judgment on the merits when the district court granted summary judgment in favor of DHS as to all of Humphrey's claims.")  The elements of the defense of claim preclusion having been met, Physicians Mutual is entitled to judgment as a matter of law in its favor with respect to Counts One and Two for breach of contract and fraud.

Moreover, even in the absence of a final judgment, the elements of issue preclusion or collateral estoppel are met. *See Christo v. Padgett*, 223 F.3d 1324, 1339 (11th Cir. 2000) ("It is widely recognized that the finality requirement is less stringent for issue preclusion than for claim preclusion. … The July 13 order satisfied this limited standard for finality. The court considered a wide range of evidence from all concerned parties and wrote a substantial order in which it explained its findings.").  The issues at stake in the second complaint are identical to those in the first complaint and decided in the order on summary judgment.  Mr. Moody's

---

[6]  The claim for fraud in the second complaint includes an allegation that Mr. Moody watched television commercials that promoted the life insurance and depicted it as a guaranteed life insurance, with no medical exam or health questions asked, and "permanent protection that can never be cancelled".   However, the remainder of Count Two is nearly identical. (compare doc. 1-1, with doc. 47-4).

breach of contract and fraud claims against Physicians Mutual were actually litigated and

deciding these claims was a necessary part of the summary judgment.  Last, Mr. Moody and

Physicians Mutual were parties and both had a full and fair opportunity to litigate Mr. Moody's

claims.  The elements of the defense of issue preclusion having been met, Physicians Mutual is

entitled to judgment as a matter of law in its favor with respect to Counts One and Two for

breach of contract and fraud.

    2.  <u>Mr. Moody's claim for breach of contract against Physicians Life (Count One)</u>

In the complaint, Mr. Moody claims that Physicians Life breached the Life Insurance

Agreement "by not honoring said policy upon the insured's demise per the agreement" (doc.

44, p. 14). Specifically, Physicians Life denied Mr. Moody's claim and did not pay him the full

amount of the policy, $10,000, upon notice of Ms. Moody's death.

This action was removed to this Court on basis of diversity jurisdiction. Therefore, the

substantive law of the State of Alabama applies. *Manuel v. Convergys Corp*., 430 F.3d 1132,

1139 (11th Cir.2005) ("[A] federal court in a diversity case is required to apply the laws,

including principles of conflict of laws, of the state in which the federal court sits.") (citing

*Klaxon Co. v. Stentor Elec. Mfg. Co*., 313 U.S. 487, 496, 61 S.Ct. 1020 (1941)); *Michel v. NYP*

*Holdings, Inc*., 816 F.3d 686, 694 (11th Cir. 2016) ("In a diversity action such as this one, a

federal court must apply the choice-of-law principles of the state in which it sits.").

Generally, the "doctrine [of *lex loci contractus*] states that a contract is governed by the

laws of the state where it is made except where the parties have legally contracted with

reference to the laws of another jurisdiction." *Colonial Life & Accident Ins. Co. v. Hartford*

*Fire Ins. Co*., 358 F.3d 1306, 1308 (11th Cir. 2004) (citing *Cherry, Bekaert & Holland v.*

*Brown*, 582 So.2d 502, 506 (Ala. 1991)) (internal quotations omitted).  Although Ms. Moody

may have been in Mobile, Alabama at the time she filled out the application, both the application and the policy show her address as Lucedale, Mississippi. The policy was delivered and issued to Ms. Moody at that address and contained a document captioned "Summary of Mississippi Life and Health Insurance Guaranty Association Act and Notice Concerning Coverage Limitations and Exclusions" (doc. 25-6, p. 11).

The policy does not contain a choice of law provision.  Therefore, under Alabama law, the policy is governed by the laws of Mississippi because it was issued in that state. *Employers Mutual Casualty Co. v. Doyle Dickerson Terrazzo Inc.*, 2017 WL 4844298, at *2 (N.D. Ala. Sept. 30, 2017) (When an insurance policy contains no choice of law provision, we must look to the choice of law rules of the forum state, Alabama, to determine the applicable law. . . . Alabama's choice of law rule provides that the law of the state wherein the contract was executed shall govern interpretation of the contract."); *see Cincinnati Ins. Co. v. Girod*, 570 So.2d 595, 597 (Ala.1990) ("Because this dispute involves an interpretation of an insurance policy issued in the State of Alabama, under Alabama's conflicts of law rule the trial court would be obligated to apply the substantive law of Alabama ...").

Under Mississippi law, "[g]enerally, a policy of life insurance is a stand-alone contract whose purpose is to provide a sum of money to the named beneficiary upon the death of the listed insured." *Pulliam v. Alfa Ins. Co.*, No. 2016-CA-00603-COA, 2018 WL 619495, at *5 (Miss. Ct. App. Jan. 30, 2018) (citing *Barber v. Balboa Life Ins.*, 747 So.2d 863, 866 (¶ 11) (Miss. Ct. App. 1999) (distinguishing a life insurance policy from a credit life insurance policy). "An insurance policy is a contract between the insurer and the insured. Like other contracts, insurance policies which are clear and unambiguous will be enforced according to their terms." *Clarendon Nat. Ins. Co. v. McAllister*, 837 So. 2d 779, 780 (Miss. Ct. App. 2003)

(quoting *State Farm Mutual Auto. Ins. Co. v. Universal Underwriters Ins. Co.*, 797 So.2d 981,

985 (Miss. 2001). "We give terms used in insurance policies their ordinary and popular

definition." Id. (quoting *Blackledge v. Omega Ins. Co.*, 740 So.2d 295, 298 (Miss.1999)).  "A

contract is to be construed and enforced as written." *Id.* (citing *Weeks v. Mississippi College*,

749 So.2d 1082, 1087 (Miss.Ct.App.1999)).  Under Mississippi law, a "breach-of-contract case

has two elements: (1) "the existence of a valid and binding contract," and (2) a showing "that

the defendant has broken, or breached it." *Maness v. K & A Enterprises of Mississippi*, 2018

WL 774010, at *8 (Miss. Feb. 8, 2018) (quoting *Business Communications, Inc. v. Banks*, 90

So.3d 1221, 1224 (Miss. 2012)).

 Relying on the Certificate of Death confirming that Ms. Moody died of natural causes

related to her diagnosed ALS[7]  (doc. 47-4), Defendants argue that Ms. Moody did not die from

an accident as defined in the policy during the first two years the policy was in effect. They

assert that Defendant Physicians Life was not required to pay the full amount of the policy and

consequently, did not breach the insurance contract.

 Defendants also argue that they are entitled to summary judgment as to Count Two

because Mr. Moody does not have any competent evidence, specifically expert medical

testimony[8] as to cause of death, to create a genuine issue of fact as to whether Ms. Moody died

---

[7]  "Certified copies as evidence. Any copy of the records of birth, sickness or death, when
properly certified to by the state registrar of vital statistics, to be a true copy thereof, shall be
prima facie evidence in all courts and places of the facts therein stated." Miss. Code Ann. § 41-
57-9.  "Registers of marriages, births and deaths, kept in pursuance of law or any rule of a
church or religious society may be certified by the custodian thereof and, when so certified, are
presumptive evidence of the facts therein stated as well as of the law or rule in pursuance of
which such registry was made and of the authority to certify the same." Ala. Code § 12-21-101.

[8] After the motion for summary judgment was filed, the Magistrate Judge granted Defendant's
motion to strike Mr. Moody's two medical expert witness reports (doc. 32).  Therefore, Mr.
Moody has not presented any medical expert witness testimony as to the cause of death.

as a result of an accident as opposed to her diagnosed ALS. (doc. 47-1, p. 11-13). Defendants point out that no one was present when Ms. Moody died, thus there were no eye-witnesses and that Dekaya Moody's opinion that her mother died from a fall is not competent evidence as to medical causation of Ms. Moody's death (doc. 47-1, p. 6-9).  Alternatively, Defendants assert that even if there were competent evidence that Ms. Moody fell, and that her fall was an accident, Mr. Moody has acknowledged that her fall was not independent of disease, as required by the definition of "Accident" in the policy; Mr. Moody testified that the fall occurred due to Ms. Moody's weakened condition from ALS (doc. 47-1, p. 12).

Dekaya Moody, as a lay witness, may testify "in the form of an opinion" if her testimony is "rationally based on" her "perception" Fed. R. Evid. 701. Dekaya Moody stated that she heard, but did not see, her mother's fall, and that afterward her mother showed signs of injury. Specifically, blood from the tracheotomy, bruising on her upper right shoulder area, difficulty breathing, and a purple mouth.  This evidence is sufficient to establish that Ms. Moody fell and was injured as a result.

However, as to whether the injuries from the fall actually caused Ms. Moody's death, Dekaya Moody's opinion is not competent evidence. *See Sowers v. R.J. Reynolds Tobacco Co.*, 2015 WL 12839775, at *5 (M.D. Fla. Jan. 23, 2015) (excluding opinions regarding the medical cause of injuries or death and finding that "…opinions regarding medical causation require scientific and specialized knowledge, and thus are not admissible when offered by lay witnesses.") (citing Fed. R. Evid. 701 and citing *Wingster v. Head*, 318 Fed.Appx. 809, 815 (11th Cir. 2009) for the "finding that a medical causation issue 'present[ed] a technical and scientific issue that require[d] the specialized knowledge of an expert medical witness'"; *Abbott v. Elwood Staffing Servs., Inc.*, No. 12 C 2244, 2014 WL 3809808, at *8 (N.D. Ala. July 31,

17

2014) for "finding a lay opinion regarding medical causation was inadmissible expert testimony"; *E.C. ex rel. Crocker v. Child Dev. Sch., Inc.*, No. 10 C 759, 2011 WL 4501560, at *9 (M.D. Ala. Sept. 29, 2011) for the "holding that lay witness testimony could not be used to infer medical causation because expert medical testimony is required to establish proximate cause of an illness"; and *Payne v. May*, No. 6 C 254, 2009 WL 6365402, at *1 (N.D. Ga. Mar. 13, 2009) for the "ruling in limine to exclude lay witnesses from testifying at trial regarding medical causation".)

The clear and unambiguous terms of the policy state that the "Death Benefit for the first two years of the Policy is 110% of the premium paid for the policy unless death is due to an accident. If death is due to an accident, the full Face Amount is payable." (Doc. 47-6, p. 4). The policy defines accidental death as "death that: a) results from accidental bodily injury occurring while the policy is in force; b) occurs within 180 days of the injury; and c) is independent of disease, suicide and all other causes." (doc. 47-6, p. 4).

Viewing the admissible evidence in the light most favorable to the non-movant, no reasonable fact-finder could find that Ms. Moody's death, which occurred during the first two years of the policy, was the result of an accidental bodily injury that was independent of ALS. Since there is no genuine issue of material fact as to the cause of Ms. Moody's death, natural causes related to ALS, summary judgment is due to be granted in favor of Physicians Life as to Mr. Moody's breach of contract claim.

3. Mr. Moody's fraud claim against Physicians Life (Count Two)

Mr. Moody claims that Physicians Life committed fraud by falsely representing to him that "under the terms of the contract that $10,000.00 of guaranteed life insurance coverage was in effect." (Doc 44, p. 13-14). On motion for summary judgment, Physicians Life argues that

the fraud claims asserted by Mr. Moody are barred by Code of Alabama § 6-2-38(l) which imposes a two-year statute of limitation on actions premised on fraud[9] (doc. 47-1, p. 13-16). Defendants assert that there is no genuine issue of fact that Ms. Moody died on March 4, 2012, that Mr. Moody confirmed at his deposition that he called Physicians Life "right after his wife died" (doc. 47-1, p. 16) and was told that his claim for the face amount of the policy would be denied, and that Mr. Moody was again made aware of the denial of his claim in August 2012, when his counsel received notice of the denial from Physicians Life.[10]   Defendants also point out that Mr. Moody confirmed in his deposition that he called Physicians Life "right after his wife died" and was told that his claim for the face amount of the policy would be denied. Defendants point out that the action was filed on March 27, 2017, more than four years after Mr. Moody became aware of the denial.

As previously stated, this action was removed to this Court on basis of diversity jurisdiction. Therefore, the substantive law, including the choice-of-law principles of the State of Alabama applies. *Manuel,* 430 F.3d at 1139 (11th Cir.2005) (citations omitted). "Under the principle of *lex loci delicti*, an Alabama court will determine the substantive rights of an injured party according to the law of the state where the injury occurred." *Lifestar Response of Alabama, Inc. v. Admiral Ins. Co*., 17 So. 3d 200, 213 (Ala. 2009) (citing *Fitts v. Minnesota Mining & Mfg. Co*., 581 So.2d 819 (Ala.1991)). Under Alabama law, "the place of injury is in the state where the fact which created the right to sue occurs." *Ex parte U.S. Bank Nat. Ass'n.,*

---

[9]  The statute provides that "[a]ll actions for any injury to the person or rights of another not arising from contract and not specifically enumerated in this section must be brought within two years."  Ala. Code § 6-2-38(l) (1975).

[10]  Defendants cite to the Declaration of its claims manager (doc. 47-3).

148 So. 3d 1060, 1070 (Ala. 2014).  Alabama has a two-year statute of limitations on a claim of fraud. Ala. Code § 6-2-38(l) (1975).

The undisputed evidence shows that denial of full coverage was made clear to Mr. Moody and to Mr. Moody's counsel in August 2012 when Physicians Life sent a check for the reduced benefits to counsel's office in Mobile, Alabama. Mr. Moody did not bring his action until 2017, more than two years after he became aware of the denial.  Accordingly, Mr. Moody's fraud claim in Count Two of the complaint is barred by the applicable statute of limitations and Defendant Physicians Life is entitled to summary judgment in its favor as to this claim.

4. Mr. Moody's claim for breach of fiduciary duty (Count Three)

Mr. Moody claims that Physicians Mutual and Physicians Life breached their fiduciary duty to him "by failing to pay the benefits pursuant to the insurance policy" (doc. 44, p. 15). Specifically, Mr. Moody alleges that Defendants should have paid the full value of $10,000.00. Defendants argue that Alabama law does not recognize a breach of fiduciary duty claim because there is no fiduciary relationship between an insurer and insured for first-party insurance contracts.  Defendants assert that for first party claims, the insurer and the insured are in adversarial position and there is no fiduciary relationship and thus no fiduciary duty.

The Court agrees. In *Federal National Mortgage Ass'n v. GNM II, LLC*, 2014 WL 1572584 (M.D. Ala. Apr. 17, 2014), the Middle District of Alabama addressed a breach of fiduciary duty claim in the context of first party insurance.  Relying upon the decision in *Sayer v. Lincoln National Life Insurance Company* that "the Alabama Supreme Court has expressly declined to find a fiduciary relationship between insurance companies ... and their customers in the context of the purchase of casualty, health, *or life insurance and attempts to collect under*

*those policies*",  2006 WL 6253201, *6 (N.D. Ala. 2006) (emphasis added), the Middle District

held that Defendant GNM as a "customer" of Travelers Insurance Company could not establish

a fiduciary relationship between them and thus GNM's breach of fiduciary duty claim was

dismissed.  The Middle District explained that litigation over an alleged "'failure to adequately,

and jointly, pay' under an existing policy is clearly an attempt to collect under the insurance

policy." *Federal National Mortgage Ass'n.,* 2014 WL 1572584, at *4.

In this action, Mr. Moody's claim alleging breach of fiduciary duty for failing to pay the

full amount of the policy is also an attempt to "collect under" the life insurance policy. The

same result would occur under Mississippi law. *VanNorman v. Stonebridge Life Ins. Co.,* 2012

WL 399187, at *3 (S.D. Miss. Feb. 7, 2012) ("VanNorman's second claim, for breach of

fiduciary duty, also fails. Established Mississippi law recognizes that an insurance contract is

an arms' length transaction out of which no fiduciary duty arises.").  Accordingly, Mr. Moody's

breach of fiduciary duty claim is due to be dismissed.

III. Conclusion

For the reasons set forth herein, summary judgment is GRANTED in favor of

Defendants Physicians Mutual and Physicians Life as to Count One, Count Two, and Count

Three. [11]  Final judgment shall be entered by separate document. Fed. R. Civ. P. 58(a).

The Clerk is directed to mail a copy of this Order to Plaintiff.

DONE and ORDERED this the 13th day of July 2018.

s/ Kristi K. DuBose
KRISTI K. DuBOSE
CHIEF UNITED STATES DISTRICT JUDGE

---

[11]  Defendants also argue that Mr. Moody is not entitled to punitive damages on his breach of
contract claim (doc. 47-1, p. 16-17).  Because the Court has determined that summary judgment
is due to be granted in favor of Defendants as to Count One for breach of contract, the Court
need not address this argument.